UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CORTEZ DEON ELIE**<br>    **LA. DOC #500542**<br>**VS.** | **CIVIL ACTION NO. 3:11-cv-1454**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **SHERIFF MARK SHUMATE, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

**REPORT RECOMMENDING DISMISSAL OF SOME BUT NOT ALL CLAIMS AND SOME BUT NOT ALL DEFENDANTS**

*Pro se* plaintiff Cortez Deon Elie, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on August 11, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. When he filed this complaint he was incarcerated at the Richwood Correctional Center, Monroe, Louisiana, however, he claimed that he was assaulted by his fellow inmates and corrections officers while he was incarcerated at the East Carroll Detention Center (ECDC) in Lake Providence, Louisiana.

Plaintiff sued ECDC, its Warden Ronnie Harris, Corrections Officers Wayne Robinson and James Binder, and East Carroll Parish Sheriff Mark Shumate. In his amended complaint, he claimed also that he was the victim of excessive force on the part of Corrections Officers Jones, Hutseal, Gus and Danny.

He prayed for compensatory damages of $25,000. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that plaintiff's claims of excessive force against defendants Jones, Hutseal, Gus and Danny be

**DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted; it is further recommended that plaintiff's claims against defendants ECDC, Ronnie Harris and Mark Shumate be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

*1. Original Complaint [Doc. 1]*

Plaintiff filed his original complaint on August 11, 2011. Therein he alleged that on some unspecified date prior to May 19, 2011, he was incarcerated at the River Bend Detention Center (RBDC) in Lake Providence; on that date he advised Warden Ronnie Jones that Corrections Officer James Binder was introducing contraband – cell phones and drugs – into the prison.

Plaintiff was transferred to ECDC on some unspecified date. On May 19, 2011 jail authorities discovered that EDDC Corrections Officer Wayne Robinson was introducing contraband into that prison. Robinson contacted Binder who advised Robinson that it was plaintiff who had informed on Binder when plaintiff was incarcerated at RBDC.

Robinson then confronted plaintiff and told him "... to put on [his] shoes so [he] could fight." According to plaintiff, Robinson paid several inmates to assault plaintiff and Robinson and another unnamed guard watched as these inmates beat plaintiff "for at least an hour." Plaintiff asked Robinson to call Lt. Carter for assistance but Robinson refused. Eventually, a corrections officer arrived for pill call and plaintiff ran to the door and asked him to call for assistance. Officer Binder advised the corrections officer that plaintiff was bleeding because he had been hit with a lock after having been caught stealing from another inmate. Plaintiff alleged no injuries but claimed that he continues to suffer from pain and nightmares.

2

*2. Amend Order [Doc. 5] and Amended Complaint [Doc. 9]*

Plaintiff was directed to amend his complaint to provide additional factual support for his claims.[1] On January 17, 2012, plaintiff submitted a response to the amend order.

In the amended complaint plaintiff alleged that on November 6, 2010, while imprisoned at the River Bend Detention Center, he and two other inmates were placed in administrative segregation as a result of having been charged with being in possession of a cell phone, charger, and MP3 player.

An investigation by Warden Jones discovered that the contraband, which also included drugs, was introduced into the facility by Corrections Officer James Binder. The law enforcement officer in charge of the investigation was Det. John Martin of the East Carroll Parish Sheriff's Department. According to plaintiff, Martin is Binder's uncle and that fact "... prevented Warden Jones and Sheriff Shumate ... from pursuing charges against CO James Binder due to possible parish publicity..." According to plaintiff, Jones and Martin agreed to have plaintiff transferred to the

---

[1] Plaintiff was instructed, "Plaintiff's claims thus far are purely conclusory and are unsupported by factual allegations. For example, his description of the assault that occurred is lacking in detail. He should allege facts to support the allegation that Corrections Officer Robinson paid or otherwise encouraged the other inmates to attack plaintiff. He should state when and where the assault occurred, and, he should provide a detailed description of the injuries he received and the nature of the treatment he received for those injuries. He should also state whether an incident report was written up or whether a prison disciplinary hearing was convened and he should provide copies of the reports and charges that were filed as a result of the affray.

Further, while plaintiff has alleged fault on the part of Corrections Officer Robinson, he has alleged no fault with regard to the other defendants, Binder, Harris, and Shumate. He should amend his complaint to provide the Rule 8 details (i.e., the name of <u>each person</u> who allegedly violated plaintiff's constitutional rights; a description of what actually occurred or <u>what each defendant did to violate plaintiff's rights</u>; <u>the place and date that each event occurred</u>; and a description of the <u>alleged injury</u> sustained as a result of the alleged violation) with regard to these defendants. [Doc. 5]

Richwood Corrections Center in return for his assistance in their investigation. According to plaintiff, the "summarized disciplinary reports" were destroyed and disposed of in order to prevent negative publicity. Plaintiff remained in administrative segregation unable to contact his family for 3 months. Plaintiff submitted a grievance to Warden Jones concerning his detention in administrative segregation; Warden Jones agreed to transfer plaintiff to ECDC in return for plaintiff dropping his grievance.

On January 16, 2011, plaintiff was transferred to ECDC. Corrections Officer Binder was allowed to retain employment and was also transferred to ECDC pending further investigation. On some unspecified date CO Jones, a relative of Binder, verbally threatened plaintiff and advised him that Binder had an ounce of marijuana that he would offer in payment to any inmate who was willing to "seek revenge" on plaintiff. Plaintiff notified Warden Ronnie Harris of the threat; Harris confronted Binder who denied the allegation.

On March 31, 2011, CO Jones again verbally threatened plaintiff and then pushed him. Jones advised plaintiff that he was going to report that plaintiff assaulted him. Then Jones, along with Corrections Officers Hutseal, Gus, and Danny, "... forcefully subdued and dragged [plaintiff] to an undisclosed room where they all commenced to inflict bodily harm by kicking [plaintiff] with their boots after making [plaintiff] bend down on his knees. Then kicked [plaintiff] in the face until [plaintiff] was overcome with pain and assumed the fetal position in attempt to protect himself." According to plaintiff, the Corrections Officers continued to abuse plaintiff by hitting him with their portable radios for 20 minutes and then spraying him with two cans of mace spray. At this point, Warden Harris arrived; plaintiff advised Harris that he intended to "call a counselor at law" to assist him with regard to the physical abuse noted above. At this point, Harris directed the Corrections

Officers to file a disciplinary report charging plaintiff with battery. They did so and plaintiff was ultimately convicted of the offense and sentenced to the loss of 1-year of good time credits.

Following this incident, plaintiff was sent to the nurse for physical evaluation. The Corrections Officers advised the nurse that plaintiff was given a shower prior to the evaluation; however, the nurse did not believe that story because she "detected the present smell of applied mace" on plaintiff. Thereafter, CO Jones "threw [plaintiff] in shower area with same clothes on..." Thereafter, photographs were taken of the plaintiff to document his "... bruised ribs, hands and face trauma..." Notwithstanding these injuries, Warden Harris refused to transport plaintiff to the hospital for further treatment.

Plaintiff was sent to the E. A. Conway Hospital on the following day, April 1, 2011, where he was x-rayed. He was returned to the prison the same day and placed in the "back dorms" where CO Binder was stationed.

On May 17, 2011, Wayne Robinson, Binder's nephew, advised plaintiff that Binder "... was intending to have harm inflicted to [plaintiff]." According to plaintiff, "... that [night] CO Binder found some inmates to inflict harm upon [plaintiff] by offering cell phones that CO Binder would bring to the institution as payment and also marijuana..." Plaintiff then advised Lt. Carter of the plo,t and the following day he searched Robinson and discovered two ounces of marijuana and cell phones. CO Robinson was arrested and jailed. Binder then advised plaintiff's fellow inmates that it was plaintiff who was responsible for depriving them of their cell phones and marijuana; he further instructed those inmates "to wait until pill call to induce harm to [plaintiff]..."

After pill call, "... Binder produced payment to 5 inmates to inflict bodily harm to [plaintiff] which all 5 inmates proceeded to beat up [plaintiff] with CO Binder also involved..." According to

5

plaintiff locks were used as weapons in this assault and as a result plaintiff's nose was fractured and both eyes were swollen shut. Further plaintiff maintains that he was beaten for approximately one hour during which time plaintiff "tried to run around the enclosed dorm for fear of [his] life..." Plaintiff reported this incident to the dorm guards upon their return and likewise complained to Lt. Carter. However, by the time Lt. Carter arrived on the scene, Binder had instructed the inmates to mop up "residual blood that was in place." Further, during the affray, the inmates had taken the key to plaintiff's locker and destroyed all of plaintiff's family photographs and his "legal work." Carter instructed plaintiff to submit a grievance. Thereafter, Carter moved plaintiff to a front dorm in order to provide security. Plaintiff was not taken to the hospital. The following day plaintiff was sent to the River Bend Detention Center where he was examined and then referred to E. A. Conway Hospital where he received medical treatment for his injuries. Thereafter plaintiff's family contacted Warden Harris who advised that both employees were fired pending investigation. Plaintiff was then transferred to his present place of incarceration, Hunt Correctional Center.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C.§1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the

allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's complaint adequately sets forth his claim for relief; further amendment is not

7

necessary.

### 2. Plaintiff's Claims

Plaintiff's complaints are difficult to comprehend. In his original complaint he alleged fault on the part of Corrections Officer Wayne Robinson at ECDC. According to plaintiff, it was Robinson who, on May 19, 2011, paid several inmates to assault plaintiff after it was discovered that Robinson was introducing contraband into the facility. Plaintiff alleged that Corrections Officer Binder introduced contraband into the RBDC on some unspecified date; and that Binder, who had been subsequently been transferred to ECDC, advised other corrections officers that plaintiff was bleeding from the May 19, 2011 assault because he had been hit with a lock by an inmate after it was discovered that plaintiff was stealing. Plaintiff alleged no fault on the part of Warden Harris or Sheriff Shumate.

In his amended complaint plaintiff complained that Corrections Officer Jones, a relative of Corrections Officer Binder, verbally threatened plaintiff and advised him that Binder had offered payment to any inmates willing to "seek revenge" on plaintiff. He also alleged that on March 31, 2011, Jones, along with Officers Hutseal, Gus, and Danny beat plaintiff for 20 minutes and then sprayed him with two cans of mace. Plaintiff however was charged and convicted of a disciplinary rules violation – battery on corrections officers – as a result of this incident and was deprived of 1-year of good time credits.

He then also alleged that in mid-May, 2011, Binder paid inmates to inflict physical harm on him. According to plaintiff, 5 inmates assaulted him with locks causing plaintiff to sustain injuries to his nose and eyes and that Binder instructed the inmates to clean up plaintiff's blood following the assault.

*3. Heck/Balisok*

In his original complaint, plaintiff made NO mention of the alleged assault by Corrections Officers Jones, Hutseal, Gus, and Danny on March 31, 2011. As noted above, with regard to prisoner complaints filed *in forma pauperis*, courts are afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). It seems unlikely that plaintiff would have forgotten to allege the traumatic events of March 31, 2011, in his original complaint. In other words, the undersigned has serious doubts concerning the veracity of the pleadings with respect to the events of March 31, 2011. Further, in amending his complaint, plaintiff did not specifically join Corrections Officers Jones, Hutseal, Gus and Danny as defendants.

Nevertheless, even if these allegations of fault are accepted as true, and even if these defendants are joined herein, plaintiff fails to state a claim for which relief may be granted. Plaintiff's claim for damages for the use of excessive force by these Corrections Officers is barred unless and until plaintiff can show that the resulting disciplinary rules violation he was convicted of was reversed on direct appeal, expunged by executive order, declared invalid by an authorized tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*. *See Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (When a prisoner seeks damages in a civil rights suit, the district court must consider whether judgment in favor of prisoner would necessarily imply the invalidity of his conviction or sentence; if so, the complaint must be dismissed unless prisoner can demonstrate that conviction or sentence has already been invalidated.); *Edwards v. Balisok*, 520 U.S. 641, 648-49, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (A "conviction" for purposes of the *Heck* analysis includes a ruling in a prison disciplinary proceeding that results

in a change in the prisoner's sentence, including loss of "good time" credits.)

Plaintiff implies that the disciplinary rules violation filed against him – battery on a corrections officer – was false and baseless; however, it appears that he was found guilty of the offense and as a result suffered the forfeiture of good time credits. In light of *Edwards v. Balisok*, the Fifth Circuit has held that a prisoner may not bring a civil rights lawsuit for damages about an excessive use of force incident where a judgment in his favor would necessarily imply the invalidity of his disciplinary case unless he can demonstrate that the disciplinary case has been reversed or otherwise invalidated. *See Hainze v. Richards*, 207 F.3d 795 (5th Cir.2000), citing *Sappington v. Bartee*, 195 F.3d 234 (5th Cir.1999) (An excessive force claim under Section 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events.); *Donnelly v. Darby*, 81 Fed. App'x. 823 (5th Cir.2003).

A judgment in favor of plaintiff on this complaint would apparently call into question the validity of the complained of disciplinary rules violation and conviction. Since plaintiff has not shown that his disciplinary conviction has been reversed, expunged, declared invalid, or called into question, his claims for money damages must be dismissed. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir.1996).

### *4. Supervisory Liability and Proper Party*

In his original complaint, plaintiff sued Sheriff Shumate and Warden Ronnie Harris of the ECDC. As noted above, plaintiff alleged no specific fault on the part of either of these defendants and he was ordered to amend his complaint to provide allegations of fault with respect to these defendants. His amended complaint likewise offered no specific allegations of fault with respect to Sheriff Shumate or Warden Harris.

It appears that plaintiff has sued the Sheriff and Warden in their supervisory capacities. However, "[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). Since plaintiff has alleged no fault on the part of these defendants, the complaint insofar as these individuals have been named as defendants, must be dismissed for failing to state a claim.

Plaintiff also named the ECDC as a defendant. However, Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether an entity such as a corrections facility has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. To the extent plaintiff seeks judgment against these prisons, he must show that they are juridical persons capable of being sued. It does not appear that ECDC is a juridical person and therefore plaintiff has failed to state a claim as to this defendant.

*5. Corrections Officers Binder and Robinson*

As previously noted, in his original complaint, plaintiff alleged that Corrections Officer Robinson instigated the assault on plaintiff by inmates on May 19, 2011. In the same complaint he sued Binder but alleged no specific fault. He was ordered to amend his complaint to allege fault on the part of Binder. In his amended complaint he alleged that Binder was responsible for the May 19, 2011 assault; however, he alleged no fault on the part of Robinson. These contradictory allegations of fault are troubling; nevertheless, since the allegations of fault are serious, plaintiff will be permitted to further litigate this claim against these defendants. By way of a separate order, plaintiff has been ordered to effect service of process with respect to these two defendants.

*Conclusion and Recommendation*

**IT IS RECOMMENDED** that plaintiff's civil rights complaint against the following defendants: (1) East Carroll Detention Center, (2) Sheriff Mark Shumate, (3) Warden Ronnie Harris, and Corrections Officers (4) Jones, (5) Hutseal, (6) Gus and (7) Danny be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

**BY WAY OF A SEPARATE ORDER, SERVICE OF PROCESS HAS BEEN ORDERED WITH REGARD TO THE CLAIMS AGAINST CORRECTIONS OFFICERS BINDER AND ROBINSON.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed**

**legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, January 26, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE